Dale M. Cendali
Claudia Ray
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Telephone (212) 326-2000
dcendali@omm.com
cray@omm.com

Attorneys for Plaintiff
VITALE AML CONSULTANTS, INC.

# 08 CV 01315

RECEIVED
FEB 08 2008
U.S.D.C. S.D.N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
VITALE AML CONSULTANTS, INC.,                                :
                                                             :      Index No. _____
                                  Plaintiff,                 :
                                                             :
                  v.                                         :
                                                             :      **COMPLAINT**
PROMONTORY FINANCIAL GROUP, LLC;                             :
PROMONTORY FORENSIC SOLUTIONS, LLC;                          :
HANI SAMAAN; PROMINENT IT SOLUTIONS,                         :
INC.; RONALD ROSE; AML CONSULTING                            :
SERVICES, INC.; and JOHN DOES (1-10),                        :
                                                             :
                                  Defendants.                :
                                                             :
-------------------------------------------------------------X

Plaintiff, Vitale AML Consultants, Inc. ("Vitale AML"), by its attorneys, O'Melveny &

Myers LLP, for its complaint, alleges as follows:

## NATURE OF THE ACTION AND RELIEF SOUGHT

1. This action seeks to recover damages that Vitale AML has suffered as a result of

Defendants' willful misappropriation and infringement of Vitale AML's copyrighted and trade-

secret-protected anti-money laundering software program, together with appropriate injunctive

relief.

1

2. In particular, this action concerns Defendants' reproduction, use, and distribution of a case management software program for financial institutions that Defendants call CASE TRACKER, which is substantially similar to Vitale AML's copyrighted and trade-secret-protected AMLINC Case Management System and its predecessors, such as INFO TRACK, ADMIN TRACK, and ANALYST LOG (collectively "AMLINC"). Vitale AML spent thousands of hours of labor and devoted substantial resources to develop and test AMLINC over the course of several years. Upon information and belief, Defendants have conspired illegally to reproduce AMLINC in the guise of CASE TRACKER in a matter of months using Vitale AML's copyrighted software code, misappropriated trade secrets, and confidential information in order to unfairly compete with Vitale AML. Defendants continue to infringe and exploit Vitale AML's copyrighted software code and protected trade secrets by using and licensing CASE TRACKER, despite Vitale AML's demands that they cease and desist and to Vitale AML's detriment.

3. Vitale AML seeks appropriate injunctive relief as well as the damages that Vitale AML has suffered as a result of Defendants' (a) violation of Vitale AML's exclusive rights under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., (b) violation of the Computer Fraud and Abuse Act, 17 U.S.C. 1030, (c) misappropriation of Vitale AML's trade secrets protected under New York law, (d) breach of contractual obligations of confidentiality under the common law of New York, (e) tortious interference with contract under New York law, and (f) unfair competition under the common law of New York.

## JURISDICTION AND VENUE

4. This action asserts claims arising under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. Accordingly, this Court has subject matter jurisdiction over Plaintiff's

2

claims pursuant to 15 U.S.C. § 1121, 28 U.S.C §§1331 and 1338(a) and (b). This Court also has subject matter jurisdiction pursuant to Vitale AML's claims under the Computer Fraud and Abuse Act, 17 U.S.C. 1030. This Court has subject matter jurisdiction over Plaintiff's state law claims pursuant to the principles of pendent jurisdiction.

5. Upon information and belief, this Court has personal jurisdiction over Defendants. Promontory Financial Group, LLC ("Promontory Financial") does continuous and systematic business in New York and this District. It maintains an office and employs personnel in New York and this District and is, thus, physically present in the state. *See* N.Y. C.P.L.R. 301. Promontory Forensic Solutions, LLC ("Promontory Forensic") also does continuous and systematic business in New York and this District. *Id.* All Defendants have transacted business within New York and contracted to supply goods or services in New York in connection with the matters giving rise to this suit. *See* N.Y. C.P.L.R. 302(a)(1). Defendants have also committed infringing acts outside of New York causing injury to Plaintiff in New York, and Defendants regularly do or solicit business in New York, and/or derive substantial revenue from goods sold or services rendered in New York, and/or expect or reasonably should expect their infringing conduct to have consequences in New York and derive substantial revenue from interstate commerce. *See* N.Y. C.P.L.R. 302(a)(3). In addition, Plaintiff has its principal place of business in New York and in this District, and has been injured in New York by Defendants' infringing conduct.

6. Venue is proper in this District pursuant to 28 U.S.C §§1391(b) and (c), 1400(a), and because a substantial part of the conduct giving rise to the claims herein occurred within this District.

3

## THE PARTIES

7. Plaintiff Vitale AML was and still is a corporation organized and existing under the laws of the State of New York, and is duly authorized to do business in the State of New York. Vitale AML is a leading anti-money laundering consulting company that maintains its principal place of business at 1120 Avenue of the Americas, 4th Floor, New York, New York 10036. As discussed below, Vitale AML's founder and principal owner is Anne T. Vitale, Esq., a recognized anti-money laundering expert with more than twenty years' experience in the field.

8. Vitale AML is informed and believes and thereon alleges that Defendant Promontory Financial is a Delaware limited liability company with its principal places of business located at 1201 Pennsylvania Avenue, NW, Suite 617, Washington, D.C. 20004, and 280 Park Avenue, 40th Floor West, Suite 400, New York, New York 10017. Upon information and belief, Promontory Financial conducts business within the Southern District of New York.

9. Vitale AML is informed and believes and thereon alleges that Defendant Promontory Forensic is a Delaware limited liability company its principal places of business located at 1201 Pennsylvania Avenue, NW, Suite 617, Washington, D.C. 20004, and 280 Park Avenue, 40th Floor West, Suite 400, New York, New York 10017. Upon information and belief, Promontory Forensic conducts business within the Southern District of New York, is a subsidiary of Promontory Financial, and was formed to create, use and license CASE TRACKER. (Defendants Promontory Financial and Promontory Forensic are collectively referred to herein as "Promontory Defendants.")

10. Vitale AML is informed and believes and thereon alleges that Defendant Hani Samaan ("Samaan") was and still is an individual residing in the State of New Jersey, County of Hudson, at 730 Newark Avenue, Apt. 7G, Jersey City, New Jersey 07306. Upon information

4

and belief, Samaan was and still is the sole shareholder and officer of Prominent IT Solutions, Inc.

11. Vitale AML is informed and believes and thereon alleges that Defendant Prominent IT Solutions, Inc. ("Prominent IT") is a New Jersey corporation with its principal place of business located at 730 Newark Avenue, Apt. 7G, Jersey City, New Jersey 07306. Upon information and belief, Prominent IT conducts business in the Southern District of New York. (Defendants Samaan and Prominent IT are collectively referred to herein as "Samaan Defendants.")

12. Vitale AML is informed and believes and thereon alleges that Defendant Ronald Rose ("Rose") was and still is an individual residing in the State of New York, County of Nassau, at 573 Lincoln Boulevard, Long Beach, New York 11561. Upon information and belief, Rose was and still is the sole shareholder and officer of AML Consulting Services, Inc.

13. Vitale AML is informed and believes and thereon alleges that Defendant AML Consulting Services, Inc. is a New York corporation with its principal place of business located at 573 Lincoln Boulevard, Long Beach, New York 11561. Upon information and belief, AML Consulting Services, Inc. conducts business in the Southern District of New York. (Defendants Rose and AML Consulting Services, Inc. are collectively referred to herein as "Rose Defendants.")

14. Vitale AML is unaware of the true names and capacities of Defendants John Does 1 through 10, inclusive, and therefore sues said Defendants by such fictitious names. Such Defendants are persons, corporations, partnerships, associations, or other legal entities who have acted in concert with any of the above-named Defendants to infringe and/or exploit Vitale AML's copyrighted software code and protected trade secrets. The Promontory Defendants,

Samaan Defendants, Rose Defendants, and John Doe Defendants are collectively referred to herein as "Defendants."

## VITALE AML CONSULTANTS, INC. AND AMLINC

15. Vitale AML Consultants, Inc. is a leading provider of comprehensive anti-money laundering solutions to the financial services industry. In addition to providing prospective advice and assistance to financial institutions regarding compliance with government regulations such as the USA Patriot Act and Bank Secrecy Act, Vitale AML has established itself as an industry leader in conducting ongoing transaction monitoring and "look-back" reviews of past transactions required by regulatory enforcement actions.

16. Vitale AML was founded in 2004 by Anne T. Vitale, Esq., the sole shareholder and principal of the company. It is the culmination of Ms. Vitale's 20 years' experience in the anti-money laundering industry. Ms. Vitale is a recognized expert on money laundering issues, former Assistant U.S. Attorney for the Southern District of New York, and former Managing Director and Deputy General Counsel of Republic National Bank of New York. She has testified as an expert on money laundering through correspondent banking before Congress, and was a member of the U.S.'s Anti-Money Laundering Delegation to China in 2004.

17. Ms. Vitale founded Vitale AML in 2004 in order to take over the transaction monitoring projects begun under Anne T. Vitale, Esq. and to develop a sophisticated, proprietary software system to master the overwhelming volume of data involved in such ongoing and look-back transaction monitoring reviews.

18. Ms. Vitale determined in 2004 that the financial services industry lacked an efficient, sophisticated, comprehensive case management and transaction monitoring system that could fully meet the needs of clients, investigators, and analysts in satisfying the requirements of

-6

relevant government regulatory agencies. At that time, banks were using rudimentary methods --
often Microsoft Excel spreadsheets -- to monitor compliance issues, and no company had
developed a system suitable for monitoring correspondent banking transactions. Vitale AML set
out to fill this void by developing, testing, implementing, and enhancing, over the next three
years, Vitale AML's proprietary software program, AMLINC.

19.  Vitale AML was one of the first in the industry to develop a sophisticated,
proprietary software system to master the overwhelming volume of data involved in such
ongoing transaction monitoring projects and look-back reviews. Vitale AML also was one of the
first to develop a system for analysis of correspondent banking transactions between foreign and
U.S. banks, which have come under strict scrutiny in the government's efforts to combat money
laundering and terrorist financing.

20.  Vitale AML created AMLINC using Ms. Vitale's vast knowledge of the industry
gathered over 20 years as well as her unique experience with government agencies and
individual clients in the financial services industry. The information used to develop AMLINC
was not available to the general public, and the program has not been publicly marketed.
Instead, AMLINC has been licensed to financial institution clients of Vitale AML or
demonstrated to others following execution of stringent confidentiality agreements.

21.  Vitale AML has treated the AMLINC program, as well as the methods, concepts, and
confidential information underlying it, as proprietary trade secrets. The nature of the AMLINC
system and the processes underlying it are not generally known, nor are they readily
ascertainable by others. Vitale AML has taken reasonable measures to protect the secrecy of
AMLINC by, *inter alia*, executing stringent confidentiality agreements with anyone given access
to the program; by issuing reminders of the confidential and proprietary nature of the program

and the underlying information; by restricting access to the program and underlying information; by using the latest computer security software; and by providing computer hardware protected by passwords and security software to employees and consultants for use in working with the program.

22. Vitale AML also registered the AMLINC 3.0 software code's copyright with the United States Copyright Office, obtaining a Certificate of Registration with Registration Number TX 6-812-454.

## VITALE AML'S RELATIONSHIP WITH THE SAMAAN DEFENDANTS

23. Beginning in September 2004, Ms. Vitale hired Thomas Paulantonio and his company, Iridium Corporation, as independent contractors to create, devise, and implement a unique, comprehensive case management system. After Ms. Vitale and Mr. Paulantonio developed the concept for AMLINC and implemented it, Ms. Vitale directed Mr. Paulantonio to find a programmer to write the computer source code that would operationalize the future development of AMLINC.

24. In mid-December 2004, Defendant Samaan was placed with Anne T. Vitale, Esq. by a personnel firm. Beginning in January 2005, Samaan and all other independent contractors were retained through Vitale AML.

25. From December 2004 until April 2007, Samaan was retained as a programmer working full time to write the computer source code for AMLINC while also working on various projects for clients of Ms. Vitale and Vitale AML. In connection with this work, Samaan signed stringent confidentiality agreements that contained survival provisions pursuant to which they continue beyond completion of Samaan's work for Ms. Vitale and Vitale AML. These agreements also acknowledged that AMLINC and Vitale AML's confidential information

8

constituted trade secrets of Vitale AML.

26. Additionally, Samaan signed an agreement transferring any proprietary interests he might have had in AMLINC to Iridium Corporation and Mr. Paulantonio, who in turn signed an agreement transferring any and all such rights to Vitale AML.

27. From his initial engagement through April 2007, when Samaan ceased work for Vitale AML, Samaan held himself out at all times to the public as an agent for Vitale AML. The Samaan Defendants provided services exclusively to Ms. Vitale and Vitale AML, and Ms. Vitale and Vitale AML entirely controlled the quality and design of Samaan's work.

28. When Samaan began to work with Ms. Vitale and Mr. Paulantonio, he was a recent graduate from school, with limited programming experience and no experience with financial institutions. The information that Samaan gained while working for Ms. Vitale and Vitale AML constituted Vitale AML's proprietary and confidential practices and materials in the anti-money laundering industry, providing no independent basis for Samaan's immediate development of a system comparable to AMLINC upon his departure from Vitale AML.

### VITALE AML'S RELATIONSHIP WITH THE ROSE DEFENDANTS

29. Anne T. Vitale, Esq. hired the Rose Defendants in November, 2004, and Vitale AML retained the Rose Defendants from January 2005 through April 2006 as independent contractors to conduct transaction monitoring and quality control for a correspondent banking project. During this time, the Rose Defendants had access to Vitale AML's proprietary information, trade secrets, and AMLINC, all of which were subject to a confidentiality agreement. The Rose Defendants also referred investigators to Vitale AML during this time period. The Rose Defendants discontinued their work for Vitale AML in April 2006, and began working for the Promontory Defendants. Upon information and belief, Rose began soliciting

9

Samaan in or about April 2007 to leave Vitale AML and to breach his contractual obligations by reproducing AMLINC in the guise of CASE TRACKER for the Promontory Defendants.

30.  Prior to November 2004, Ms. Vitale had referred Rose to work on a look-back project in April 2003 involving retail banking, which she was retained to organize and direct. Ms. Vitale trained Rose and the other workers engaged in this project.  On information and belief, this project was the first instance that Rose worked for a bank.  Prior to November 2004, the Rose Defendants had not worked for a bank on any project involving correspondent banking. Similarly, prior to November 2004, the Rose Defendants did not have prior experience monitoring transactions and tracking investigations using an Access-based case monitoring system for correspondent banking.

## DEFENDANTS' MISAPPROPRIATION AND INFRINGEMENT OF AMLINC

31.  The Samaan Defendants were engaged full time during the early months of 2007 on a Vitale AML project for Bangkok Bank PLLC.  In April 2007, the Samaan Defendants drastically reduced their presence at the bank.  Upon information and belief, during this time the Samaan Defendants began talking with the Rose Defendants and the Promontory Defendants about working with them on a project for American Express.

32.  On April 30, 2007, Samaan visited the offices of Vitale AML's computer consultants to assist with the installation of AMLINC on Vitale AML's new server.  At that time, Samaan informed Vitale AML that he would not sign the general consulting and confidentiality agreement they had been negotiating for four months, and terminated his relationship with Vitale AML.  Samaan returned the laptop computer Vitale AML had provided him for work on AMLINC, but did not return the laptop's external CD drive and SQL server disk.  Upon information and belief, Samaan also retained Vitale AML's proprietary information, including

10

data on a USB data memory stick, and passwords that Vitale AML needed for full access to its own software programs.

33.   In or before April 2007, upon information and belief, Promontory Financial was retained by American Express to conduct a major AML project that was to include transaction monitoring.   Like Vitale AML, Promontory Financial advises financial institutions regarding compliance with anti-money laundering regulations.   Upon information and belief, Promontory Financial did not have a case management system capable of performing such a transaction monitoring look-back operation prior to its retainer by American Express for this project.   In April 2007, upon information and belief, Promontory Financial retained the Rose Defendants to conduct the transaction monitoring.   In or about April 2007, when the Samaan Defendants were reducing their daytime presence at Vitale AML, upon information and belief, the Rose Defendants and the Samaan Defendants were negotiating for the Samaan Defendants to be retained by the Promontory Defendants.

34.   On May 31, 2007, Promontory Financial formed Promontory Forensics.   Upon information and belief, Promontory Forensics was formed to license and distribute the infringing product, CASE TRACKER.   Upon information and belief, responding to the pressing needs of the new American Express project, the Defendants conspired illegally to misappropriate Vitale AML's protected trade secrets and confidential information in order to produce and license CASE TRACKER.

35.   Upon information and belief, CASE TRACKER substantially copied AMLINC's copyrighted source code and architecture, and did this to directly and unfairly compete with Vitale AML, including competing with Vitale AML at American Express.   Upon information and belief, Defendants continue to operate and license CASE TRACKER despite Vitale AML's

11

demands that they cease.

36.  Vitale AML has done everything in its power to attempt to resolve this matter expeditiously and informally.  Vitale AML has sent multiple cease and desist letters to Defendants, and even offered to jointly hire an independent expert to analyze AMLINC and CASE TRACKER in an effort to resolve this dispute.  Defendants rejected this offer.  Although Defendants promised to return Vitale AML's disk drive and SQL server disk, they failed to return these materials until mid-December 2007 and only after Vitale AML sent another letter demanding their return.  Vitale AML has been left with no choice but to file this lawsuit.

## COUNT I -- COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 101 et seq.)

37.  Vitale AML repeats and realleges each and every allegation set forth in Paragraphs 1 through 36, inclusive, and incorporates them herein by this reference.

38.  By their actions alleged above, Defendants have infringed and will continue to infringe Vitale AML's copyrights in the AMLINC program by operating and licensing CASE TRACKER, which is substantially similar to and derived from AMLINC, without any authorization or other permission from Vitale AML.

39.  Vitale AML is entitled to an injunction restraining Defendants, their agents and employees, and all persons acting in concert or participation with them, from engaging in any further such acts in violation of the Copyright Act.

40.  Vitale AML is further entitled to recover from Defendants the damages, including attorneys' fees, they have sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of their acts of infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by Vitale AML, but will be established according to proof at trial.  Vitale AML also is entitled to recover

12

statutory damages with respect to Defendants' willful infringement of Vitale AML's intellectual property in the software.

## COUNT II - INDUCEMENT OF COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 101 et seq.)

41.  Vitale AML repeats and realleges each and every allegation set forth in paragraphs 1 through 40, inclusive, and incorporates them herein by reference.

42.  Upon information and belief, the Promontory Defendants and Rose Defendants are liable under the Copyright Act for inducing the infringing acts of the Samaan Defendants by their aforesaid acts, and are unlawfully fostering copyright infringement by Samaan Defendants with the object of purloining Plaintiff's copyrights.

43.  Each inducement to infringe Vitale AML's copyrighted program is separately actionable under the Copyright Act, and entitles Vitale AML to the same injunctive relief and damages as do their direct acts of infringement. As a direct and proximate result of the foregoing acts of inducement to infringe, Defendants unlawfully derived and will continue to derive income, profits, and ever-increasing goodwill from their activities, and Vitale AML has been damaged, has suffered, and will continue to suffer immediate and irreparable injury.

## COUNT III - CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 101 et seq.)

44.  Vitale AML repeats and realleges each and every allegation set forth in paragraphs 1 through 43, inclusive, and incorporates them herein by reference.

45.  The aforesaid acts of the Promontory Defendants and Rose Defendants constitute contributory copyright infringement for the infringing acts of the Samaan Defendants. Upon information and belief, the Promontory Defendants and Rose Defendants have enabled, induced, facilitated, and materially contributed to each act of infringement by the Samaan Defendants.

46. Each act of contributory infringement is separately actionable under the Copyright Act, and entitles Vitale AML to the same injunctive relief and damages as do their direct acts of infringement. As a direct and proximate result of the foregoing acts of contributory infringement, Defendants unlawfully derived and will continue to derive income, profits, and ever-increasing goodwill from their activities, and Vitale AML has been damaged, has suffered, and will continue to suffer immediate and irreparable injury.

## COUNT IV - VICARIOUS COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 101 et seq.)

47. Vitale AML repeats and realleges each and every allegation set forth in paragraphs 1 through 46, inclusive, and incorporates them herein by reference.

48. The aforesaid acts of the Promontory Defendants constitute vicarious copyright infringement for the infringing acts of the Samaan Defendants. Upon information and belief, the Promontory Defendants have both the right and ability to supervise the Samaan Defendants' infringing conduct, and to prevent the Samaan Defendants from infringing Vitale AML's copyrighted program.

49. Each act of vicarious infringement is separately actionable under the Copyright Act, and entitles Vitale AML to the same injunctive relief and damages as do their direct acts of infringement. As a direct and proximate result of the foregoing acts of vicarious infringement, Defendants unlawfully derived and will continue to derive income, profits, and ever-increasing goodwill from their activities, and Vitale AML has been damaged, has suffered, and will continue to suffer immediate and irreparable injury.

## COUNT V - COMPUTER FRAUD AND ABUSE ACT
### (18 U.S.C. § 1030)

50. Vitale AML repeats and realleges each and every allegation set forth in paragraphs 1

14

through 49, inclusive, and incorporates them herein by reference.

51. Vitale AML maintains its trade secrets and confidential and proprietary business information on a computer system that meets the definition of a "protected computer" contained in 18 U.S.C. § 1030(e)(2)(B).

52. Upon information and belief, Defendant Samaan intentionally accessed Vitale AML's protected computer system, and used such access to obtain Vitale AML's valuable protected computer source code and confidential information. Samaan's access exceeded his authorization in violation of 18 U.S.C. § 1030(a)(4). By Samaan's conduct, the Samaan Defendants obtained Vitale AML's valuable trade secrets and confidential, proprietary information and caused loss to Vitale AML, all in violation of 18 U.S.C. § 1030.

53. As a direct result of Samaan's conduct, Vitale AML has incurred damages and losses in an aggregate amount far exceeding $5,000.00 during the prior one-year period.

54. Vitale AML is entitled to recover from the Samaan Defendants the damages it has suffered, as well as the gains, profits, advantages, and unjust enrichment the Samaan Defendants have obtained as a result of their wrongful acts as alleged in this Complaint. Vitale AML is presently unable to ascertain the full extent of these damages, gains, profits, advantages, and unjust enrichment.

55. Upon information and belief, the Samaan Defendants threaten to continue to engage in the unlawful actions alleged herein, and unless restrained and enjoined will continue to do so, causing irreparable harm to Vitale AML. It is also difficult to ascertain the amount of compensation that could afford Vitale AML adequate relief for Defendants' continuing unlawful acts. Vitale AML's remedy at law is, therefore, inadequate to compensate for the injuries threatened. Vitale AML is entitled to an injunction restraining Defendants, their officers, agents

15

and employees, and all persons acting in concert with them, from engaging in any further acts

constituting a violation of 18 U.S.C. § 1030.

## COUNT VI - MISAPPROPRIATION OF TRADE SECRETS
### (New York Common Law)

56.  Vitale AML repeats and realleges each and every allegation set forth in paragraphs 1

through 55, inclusive, and incorporates them herein by reference.

57.  Due to the nature of Vitale AML's business, Vitale AML must protect the secrecy of

its clients' information as well as its many valuable trade secrets and other proprietary materials

in its possession.  Vitale AML uses a variety of stringent measures to maintain the secrecy of its

information, including, *inter alia*, restricting access to its physical facilities, restricting access to

its confidential and proprietary information, enacting electronic security measures to protect such

information, and requiring anyone granted access to such information to execute confidentiality

agreements requiring them to maintain these trade secrets and other such proprietary materials in

strict confidence.

58.  Vitale AML's trade secret materials comprise software architecture and computer

code and information that are not generally known to the public or to other persons who can

obtain economic value from their disclosure or use.  This software code and information is the

subject of reasonable efforts by Vitale AML to maintain its secrecy, and it derives independent

economic value from not being generally known.

59.  The software code and information comprising Vitale AML's trade secrets

constitute "trade secrets" under New York common law.

60.  Upon information and belief, Defendants willfully and maliciously misappropriated

Vitale AML's trade secrets through improper means.

61.  Because of the above-alleged acts and conduct of Defendants, Vitale AML has been

16

damaged, and it will suffer great and irreparable harm. The amount of this irreparable harm will be difficult to ascertain, and Vitale AML will be without an adequate remedy at law.

62. Vitale AML is entitled to an injunction restraining Defendants, their officers, agents, employees, and all persons acting in concert with them, from using, copying, publishing, disclosing, transferring, or selling Vitale AML's trade secrets, or any product or services based on or incorporating all or part of Vitale AML's trade secrets, and restraining them from obtaining any commercial advantage or unjust enrichment from the misappropriation of Vitale AML's trade secrets.

63. Vitale AML is further entitled to an order requiring Defendants, their employers, agents, employees, and all persons acting in concert with them, to return to Vitale AML any and all of its trade secrets and confidential, proprietary materials, including but not limited to any and all materials created incorporating, referencing, or derived from Vitale AML's trade secrets and confidential, proprietary information.

64. Vitale AML is entitled to recover from Defendants for the actual damages sustained by Vitale AML as a result of Defendants' wrongful acts described in this Complaint. The amount of such damages cannot be determined precisely at this time. Vitale AML is further entitled to recover from Defendants the gains, profits, advantages, and unjust enrichment that it has obtained as a result of their wrongful acts as described herein. Vitale AML is at present unable to ascertain the full extent of these gains, profits, advantages and unjust enrichment. Vitale AML also is entitled to obtain punitive damages against Defendants for Defendants' display of gross and wanton malice in misappropriating Vitale AML's protected trade secrets in order to compete unfairly with Vitale AML.

## COUNT VII - BREACH OF CONTRACT
### (New York Common Law)

65.   Vitale AML repeats and realleges each and every allegation set forth in paragraphs 1 through 64, inclusive, and incorporates them herein by reference.

66.   The Samaan Defendants have executed confidentiality and sub-consulting agreements in favor of Vitale AML acknowledging their contractual duty not to disclose Vitale AML's confidential information and proprietary trade secrets to third parties without Vitale AML's permission.  The terms of the contracts executed by the Samaan Defendants survived the termination of their relationship with Vitale AML.

67.   Vitale AML performed all of its contractual obligations to the Samaan Defendants.

68.   Upon information and belief, the Samaan Defendants have inexcusably and unjustifiably breached their obligations under the confidentiality agreements by misappropriating and disclosing to the Promontory Defendants Vitale AML's confidential and proprietary trade secrets, and by reproducing AMLINC in the guise of CASE TRACKER.  Vitale AML has never authorized Defendants to use or disclose Vitale AML's proprietary trade secrets and confidential information in any way.

69.   As a result of the Samaan Defendants' breach, Vitale AML has been damaged in an amount to be proven at trial

## COUNT VIII - TORTIOUS INTERFERENCE
### (New York Common Law)

70.   Vitale AML repeats and realleges each and every allegation set forth in paragraphs 1 through 69, inclusive, and incorporates them herein by reference.

71.   Upon information and belief, the Rose Defendants and the Promontory Defendants were aware of the Samaan Defendants' contractual obligations of confidentiality to Vitale AML

18

when they hired them to reproduce AMLINC in the guise of CASE TRACKER in breach of those contracts.

72.   Upon information and belief, Rose and the Promontory Defendants intentionally and maliciously induced the Samaan Defendants to breach their contractual duties of confidentiality to Vitale AML by hiring the Samaan Defendants for the sole purpose of misappropriating and disclosing Vitale AML's proprietary trade secrets and copyrighted software by creating CASE TRACKER.

73.   Upon information and belief, were it not for Rose's and the Promontory Defendants' offer of compensation, the Samaan Defendants would not have breached their contractual duties of confidentiality to Vitale AML by reproducing AMLINC in the guise of CASE TRACKER.

74.   As a result of the Rose Defendants' and the Promontory Defendants' tortious interference and the Samaan Defendants' breach, Vitale AML has been damaged in an amount to be proven at trial.

## COUNT IX - UNFAIR COMPETITION
### (New York Common Law)

75.   Vitale AML repeats and realleges each and every allegation set forth in paragraphs 1 through 74, inclusive, and incorporates them herein by reference.

76.   The aforesaid acts of Defendants of misappropriating Vitale AML's protected trade secrets and infringing Vitale AML's copyright rights and rights under the Computer Fraud and Abuse Act constitute unfair competition under the common law of New York in that Defendants have misappropriated, and unfairly competed with, Vitale AML's commercial business, and will continue to do so.

77.   As a direct and proximate result of the foregoing acts, Defendants unlawfully derived and will continue to derive income, profits, and ever-increasing goodwill from their activities,

19

and Vitale AML has been damaged, has suffered, and will continue to suffer immediate and irreparable injury for which Vitale AML has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Vitale AML prays for judgment against Defendants as follows:

1. That the Court find that Defendants' operation and licensing of the CASE TRACKER program constitutes willful infringement of Plaintiff's copyrights both directly and indirectly;

2. That the Court find that the Samaan Defendants exceeded authorized access to Vitale AML's protected computer systems to obtain Vitale AML's proprietary and confidential information in violation of the Computer Fraud and Abuse Act;

3. That the Court find that Defendants have misappropriated Vitale AML's valuable trade secrets in contravention of New York law;

4. That the Court find that the Samaan Defendants breached their contractual obligations of confidentiality to Vitale AML in contravention of New York law;

5. That the Court find that the Rose Defendants and the Promontory Defendants tortiously interfered with the contractual relationship between Vitale AML and the Samaan Defendants by inducing the Samaan Defendants to misappropriate and disclose Vitale AML's confidential and proprietary trade secrets in contravention of New York law;

6. That the Court find that Defendants have engaged in unfair competition with Vitale AML;

7. That the Court find a substantial likelihood that Defendants will continue to misappropriate and infringe Vitale AML's copyrighted and trade-secret-protected software code and proprietary information unless permanently enjoined from doing so;

8. That the Court enjoin Defendants, their directors and officers, agents, servants,

employees, and all other persons acting in concert or privity or in participation with them:

(a) from further disclosing any information, whether in electronic, hard-copy, or other form, which they obtained from Vitale AML, directly or indirectly, whether during or after their employment, by (1) making any copies of such information, whether electronically or by other means; (2) communicating such information to any other defendants or any third parties; (3) transferring such information to any other storage media, computer, server, facility, or other tangible or intangible thing where such information might be stored; (4) or any other means; and

(b) from further using any information, whether in electronic, hard-copy, or other form, which they obtained from Vitale AML, directly or indirectly, whether during or after their employment, by (1) selling or licensing such information to any third party; (2) providing any good or service to any third party that incorporates such information; (3) offering to provide to any third party any good or service that incorporates such information; (4) or any other means; and

(c) from transferring any information, whether in electronic, hard-copy, or other form, which they obtained from Vitale AML, directly or indirectly, whether during or after their employment, out of the country, whether by electronic means or any other means; and

(d) from contacting any current or former employee or independent contractor of Vitale AML for the purpose of obtaining any information stored on Vitale AML's computers or computer networks, from contacting any person for the purpose of obtaining Vitale AML's confidential information, or from taking any steps to obtain Vitale AML's confidential information; and

(e) from deleting, destroying, or secreting from discovery (1) any information, whether in electronic, hard-copy, or other form, which they obtained from Vitale AML, directly

21

or indirectly, whether during or after their employment; (2) any documents containing such information or any electronic files containing such information stored on any computer, laptop, hard drive, or other media (including but not limited to external hard drives, USB or firewire drives or media, cd or dvd media, zip disks, jaz disks, tape storage media, diskettes, and the like) that could contain such information; or (3) any on-line account (including but not limited to internet service provider accounts, e-mail accounts, and accounts on FTP or web servers) that · could contain such information or through which such information could have been transferred. For purposes of interpreting the foregoing, any use of such computers, media, or accounts shall be a violation of this order if such use has the effect of deleting, destroying, or secreting from discovery the information subject to this order;

9. That the Court order Defendants to account for all gains, profits, and advantages derived from their acts of misappropriation and other violations of law;

10. That all gains, profits and advantages derived by Defendants from acts of misappropriation and other violations of law be deemed to be held in constructive trust for the benefit of Vitale AML;

11. That Vitale AML receive such other injunctive relief as Vitale AML may request and the Court deems just and proper;

12. For an award of actual compensatory and liquidated damages in a sum to be determined at trial;

13. For an award of restitution, unjust enrichment, and compensatory damages according to proof at trial;

14. For an award of punitive damages for the gross, wanton and malicious misappropriation of Vitale AML's trade secrets, in an amount to be determined at trial;

22

15.  For attorney fees and costs of suit herein incurred; and

16.  For such other, further, and/or different relief as the Court deems just and proper.

Dated: New York, New York                    O'MELVENY & MYERS LLP
      February 8, 2008

By:_____

    Dale M. Cendali
    Claudia Ray
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000
dcendali@omm.com
cray@omm.com

Attorneys for Plaintiff
VITALE AML CONSULTANTS, INC.

23