# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

VITALE AML CONSULTANTS, INC.,       :     No. 08-CV-1315 (RMB)

                     :

           Plaintiff,     :

                     :

      v.               :

                     :

PROMONTORY FINANCIAL GROUP, LLC;  :
PROMONTORY FORENSIC SOLUTIONS, LLC; :
HANI SAMAAN; PROMINENT IT SOLUTIONS, :
INC.; RONALD ROSE; AML CONSULTING   :
SERVICES, INC.; and JOHN DOES (1-10),   :

                     :

           Defendants.    :

                     :

-----------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S

## MOTION FOR LEAVE TO AMEND COMPLAINT

Robert D. Gilbert
Gregory A. Frantz
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
(212) 506-2500

*Attorneys for Defendants Promontory Financial Group, LLC
and Promontory Forensic Solutions, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 4

ARGUMENT ............................................................................................................ 5

    I.    VITALE MUST DEMONSTRATE "GOOD CAUSE" UNDER RULE 16 ......... 5

    II.   VITALE CANNOT ESTABLISH GOOD CAUSE UNDER RULE 16
       FOR ANY OF ITS PROPOSED AMENDMENTS ............................................ 6

    III.  VITALE CANNOT SATISFY THE REQUIREMENTS OF RULE 15
       FOR ANY OF ITS PROPOSED AMENDMENTS ............................................ 12

         A.   Vitale Has Unduly Delayed In Seeking Leave To File Its Amended
            Complaint ..................................................................................................... 12

         B.   Defendants Would Suffer Very Substantial Prejudice If Vitale's
            Amended Complaint Were Allowed ........................................................... 15

         C.   Vitale's Proposed Amended Claims For Breach Of Fiduciary Duty
            and Tortious Interference With Business Relations Are Futile ............... 18

              1.   Vitale's fiduciary duty claims are futile ....................................... 18

              2.   Vitale's tortious interference with business relationships
                   claim is futile ............................................................................... 20

CONCLUSION ........................................................................................................ 22

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Global Tech. LLC v. Sirius Satellite Radio, Inc.*,
    836 N.Y.S.2d 807 (N.Y.Sup.Ct. 2007) ........................................................21

*Allcar Motor Parts Corp. v. Federal-Mogul Corp.*,
    No. 96 Civ. 4419 (JFK), 1998 WL 671448 (S.D.N.Y. Sept. 29, 1998)...................21

*Bell Atl. Corp. v. Twombley*,
    550 U.S. 544, 127 S. Ct. 1955 (2006) ........................................................21

*Berman v. Sugo LLC*,
    580 F.2d 191 (S.D.N.Y. 2008) ..........................................................20, 21

*Block v. First Blood Assocs.*,
    988 F.2d 344 (2d Cir. 1993) ................................................................15

*Brooks v. AIG SunAmerica Life Ins. Co.*,
    480 F.3d 579 (1st Cir. 2007) ...............................................................15

*Calvin Klein Trademark Trust v. Wachner*,
    129 F. Supp. 2d 248 (S.D.N.Y. 2001) ...................................................18, 19

*Computer Assocs. Int'l v. Altai Inc.*,
    982 F.2d 693 (2d Cir. 1992)................................................................17

*Computer Assocs. Int'l v. Altai Inc.*,
    775 F. Supp. 544 (E.D.N.Y. 1991) ........................................................15

*Conan Props., Inc. v. Mattel, Inc.*,
    601 F. Supp. 1179 (S.D.N.Y. 1984)........................................................14

*Cresswell v. Sullivan & Cromwell*,
    922 F.2d 60 (2d Cir. 1990)..................................................................13

*Fleischer v. W.P.I.X. Inc.*,
    30 Misc.2d 17 (N.Y. App. Div. 1961) ......................................................19

*Flickinger v. Harold C. Brown & Co.*,
    947 F.2d 595 (2d Cir. 1991)................................................................18

*Green v. Wolf Corp.* ,
    50 F.R.D. 220 (S.D.N.Y. 1970) ............................................................12

*H.L. Hayden Co. v. Siemens Med. Sys., Inc.*,
 112 F.R.D. 417 (S.D.N.Y. 1986) ...................................................................................12

*Horn v. PTJP Partners, L.P.*,
 16 A.D.3d 103 (N.Y. App. Div. 2005) ............................................................................18

*In re Literary Works in Elec. Databases Copyright Litig.*,
 509 F.3d 116 (2d Cir. 2007)............................................................................................13

*In re Wireless Telephone Serv. Antitrust Litig.*,
 No. 02 Civ. 2637 (DLC), 2004 WL 2244502 (S.D.N.Y. Oct. 6, 2004).............................8, 11

*Int'l Media Films v. Lucas Entm't, Inc.*,
 No. 07 Civ. 1178 (JGK)(FM), 2008 WL 781823 (S.D.N.Y. Mar. 20, 2008) ....................6, 11

*Kassner v. 2nd Ave. Delicatessen Inc.*,
 469 F.3d 229 (2d Cir. 2007)..............................................................................................6

*Lincoln v. Potter*,
 418 F. Supp.2d 443 (S.D.N.Y. 2006) .......................................................................5, 6, 12

*Middle Atl. Util. Co. v. S.M.W. Dev. Corp.*,
 392 F.2d 380 (2d Cir. 1968)............................................................................................13

*Nadel v. Play-By-Play Toys & Novelties, Inc.*,
 208 F.3d 368 (2d Cir. 2000).............................................................................................20

*Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*,
 No. 02 Civ. 1230 (LMM), 2006 WL 2242596 (S.D.N.Y. Aug. 3, 2006) ........................ passim

*Oursler v. Women's Interart Center, Inc.*,
 170 A.D.2d 407 (N.Y. App. Div. 1991) ..........................................................................19

*Parker v. Columbia Pictures Indus.*,
 204 F.3d 326 (2d Cir. 2000)........................................................................................ passim

*PPX Enter. Inc. v. Audiofidelity Enter.*,
 818 F.2d 266 (2d Cir. 1987)............................................................................................21

*Rent-A-Center Inc. v. 47 Mamaroneck Ave. Corp.*,
 215 F.R.D. 100 (S.D.N.Y. 2003) .......................................................................................5

*Sohk Sportswear, Inc. v. K.S. Trading Corp.*,
 No. 02 Civ. 2016 (LMM)(THK), 2003 WL 22208352 (S.D.N.Y. Sept. 23, 2003).......8, 12, 14

*State Teachers Retirement Bd. v. Fluor Corp.*,
 645 F.2d 843 (2 Cir. 1981)..............................................................................................13

*Stone v. Courtyard Mgmt. Co.*,
　　No. 99 Civ. 4780 (LTS)(KNF), 2001 WL 395159 (S.D.N.Y. April 17, 2001) ...................... 13

*Trezza v. NRG Energy, Inc.*,
　　No. 06 Civ. 11509 (PKC)(DF), 2008 WL 540094 (S.D.N.Y. Feb. 28, 2008) .................... 7, 18

**STATUTES**

Fed. R. Civ. P. 15 ................................................................................................................ passim

Fed. R. Civ. P. 15(a) ............................................................................................................ 5, 12

Fed. R. Civ. P. 16 ................................................................................................................ passim

Fed. R. Civ. P. 16(b) ........................................................................................................ 5, 6, 11

Fed. R. Civ. P. 26(f) .............................................................................................................. 4

17 U.S.C. § 411(a) ................................................................................................................ 13

Defendants Promontory Financial Group, LLC and Promontory Forensic Solutions, LLC (together, "Promontory") hereby submit this Memorandum of Law In Opposition to Plaintiff's Motion For Leave to Amend Complaint.[1]

## INTRODUCTION

Ten months into the case, seven months after the deadline has passed for amendment of pleadings under the case management order, and after the completion of virtually all document discovery, Plaintiff Vitale AML Consultants, Inc. ("Vitale") now seeks a radical expansion of the case to include a multitude of new claims and allegations, all of which were unequivocally known to Vitale at the outset and thus could have been asserted in the original Complaint. Specifically, Vitale now seeks to add 20 new copyrights and two new causes of action to a case that is currently about one narrow copyright. Vitale's proposed new allegations are as follows:

1. The inclusion of 14 additional copyrights relating to alleged prior versions of the AMLINC 3.0 software;

2. The inclusion of six additional copyrights relating to various "instructional and procedural" documents;

3. Breach of fiduciary duty claims against the Samaan Defendants and the Rose Defendants; and

4. A claim for tortious interference with business relations against the Rose Defendants.

The sole issue before the Court is whether Vitale meets the standard for such amendments at this stage of the case. But rather than focusing on this issue, Vitale prattles on at length about discovery disputes and other unrelated matters. This is a smokescreen intended to

---

[1] Defendants Hani Samaan and Prominent IT Solutions, Inc. (the "Samaan Defendants") and Ronald Rose and AML Consulting Services, Inc. (the "Rose Defendants") join in this opposition. Those defendants, together with Promontory, are referred to herein as "Defendants." Vitale's memorandum of law in support of its motion for leave to amend is referred to herein as "Vitale MOL."

1

distract the Court from the fact that Vitale delayed ten months in bringing claims that could have been asserted at the outset, as well as the conspicuous lack of merit of those claims.

Worse still, Vitale is so preoccupied with creating a smokescreen that it "analyzes" the amendment issue under the wrong legal standard. Because the time for amending pleadings specified in the case management schedule has passed, Vitale must demonstrate that its proposed amendments satisfy the "good cause" standard set forth in Federal Rule 16 (as well as the more liberal requirements of Rule 15). Good cause under Rule 16 requires diligence by the moving party and, under controlling Second Circuit authority, cannot be satisfied where the moving party had the information necessary to assert the proposed claims at the outset. None of Vitale's proposed amendments satisfies this standard.

To be sure, Vitale's half-hearted claim that it "did not know the facts underlying most of its claims … before learning of them in the course of discovery" (Vitale MOL at 9) is demonstrably false. ***Vitale's own filings and representations to this Court establish unequivocally that Vitale had the information necessary to assert all such claims when this action was filed.*** Indeed, Vitale's original Complaint charged Defendants with infringement of not only AMLINC 3.0, but also all its "predecessors"—which Vitale never bothered to register until recently, and in any event, are rightfully the property of Hani Samaan, not Vitale. These "predecessors" correspond to the 14 new software copyrights Vitale now seeks to add. Similarly, Vitale has admitted in letters to the Court that the six new copyrights in instructional/procedural documents were already asserted in the original Complaint as part of Vitale's trade secret claims based on those very same documents. Hence, Vitale's own statements conclusively establish that the claims based on the 20 new copyrights could have been

asserted at the outset. Its current statement to the contrary is a deliberate misrepresentation to this Court.

Vitale also provides no valid excuse for its delay in asserting the new proposed claims for breach of fiduciary duty and tortious interference. Those claims simply recast allegations that were already included in the original Complaint and try to dress them up in different legal theories that could have been asserted at the outset. Because Vitale has not established good cause under Rule 16 for any of its amendments, its proposed Amended Complaint should be denied in its entirety on this basis alone.

Vitale's proposed amendments fare no better under the more liberal standard of Rule 15, which requires an analysis of the moving party's delay, prejudice to the non-moving party and the futility of the proposed new claims. Vitale's amendments fail all three tests. In addition to the unexplained ten-month delay, Defendants would suffer severe prejudice from the addition of claims based on 20 new copyrights. Vitale's suggestion that Defendants should have been on notice of the 20 new copyrights—even though none of the material underlying those claims was registered and the law overwhelmingly favors Defendants on this issue—is specious. While Vitale tries to describe the registration requirement as a mere "technicality" (Vitale MOL at 3), the Copyright Act specifies, and the Second Circuit has held, that it is elementary that registration is in fact a jurisdictional requirement, which plainly defines the scope of the case. Absent such registrations, Defendants could not have been on notice that Vitale would assert claims based on those unregistered copyrights.

Having spent the last ten months developing and implementing a litigation strategy focused exclusively on the single narrow copyright that is currently at issue, Defendants would suffer severe prejudice were the case expanded to include 20 additional copyrights. As detailed

below, each new copyright would require substantial additional discovery and very substantial additional expert analysis. Finally, Vitale's breach of fiduciary duty and tortious interference claims would not survive a motion dismiss and therefore are futile.

In sum, Vitale cannot show "good cause" to justify its amended pleading under Rule 16, nor can it even satisfy Rule 15. Accordingly, Vitale's motion for leave to amend should be denied.

## FACTUAL BACKGROUND

Vitale filed its original Complaint on February 8, 2008. In that pleading, Vitale alleged copyright infringement of "AMLINC," which was defined collectively as the "AMLINC Case Management System and its predecessors, such as INFO TRACK, ADMIN TRACK, and ANALYST LOG." Cendali Decl., Ex. 3, ¶ 2.[2]  While the definition of "AMLINC" purportedly included prior versions, the original Complaint cited only one copyright registration—Reg. No. TX 6-812-454 for AMLINC 3.0— as the basis for the infringement claims. *Id.* at ¶ 22. Significantly, the registration certificate for AMLINC 3.0 expressly disclaimed all "[p]revious versions, namely, AMLINC 1.0, AMLINC CMS and INFO TRACK."[3] *See* 12/23/08 Declaration of Robert D. Gilbert ("Gilbert Decl.") (submitted concurrently herewith), Ex. 1.

On March 20, 2008, pursuant to Rules 16 and 26(f), the Court entered a Case Management Plan ("CMP") which set a deadline of May 1, 2008 to amend the pleadings. *See* Gilbert Decl., Ex. 2. By agreement of the parties, the CMP was subsequently amended on August 19, 2008, and then again on October 9, 2008, to extend the deadlines for fact discovery. *See* Gilbert Decl., Exs. 3 and 4. In both cases, the deadline for amendment of pleadings was left

---

[2] Where applicable, Defendants cite to the exhibits attached to the 12/2/08 Declaration of Dale M. Cendali ("Cendali Decl."), attached to Vitale's MOL.

[3] Vitale has since filed a correction to its original copyright registration for AMLINC 3.0, in which it lists additional "previous versions" that have been disclaimed. *See id.*

4

unchanged. In neither instance did Vitale seek to extend the deadline for amendment or suggest

that it might seek leave to amend after the deadline had passed. *See* 12/23/08 Declaration of

Emily Johnson Henn (submitted concurrently herewith), ¶ 2.

Nevertheless, a full seven months after the deadline for amendment has passed, Vitale

now seeks leave to file an Amended Complaint. Over the last ten months, the parties have

engaged in significant discovery based exclusively on the original Complaint, which was based

on only one copyright. The parties collectively have produced over 100,000 pages of

documents, served ten separate sets of interrogatories, and begun taking depositions, including

both party and third-party depositions. Document discovery is now substantially complete.[4]

## ARGUMENT

**I.    VITALE MUST DEMONSTRATE "GOOD CAUSE" UNDER RULE 16**

Vitale tries to justify seeking leave to file its belated Amended Complaint under Rule 15,

but that is plainly the wrong standard. Where a party moves to amend the pleadings after the

expiration of the deadline specified in the scheduling order, it is fundamental that "he must

satisfy the good cause requirement of Fed. R. Civ. P. 16(b) before being granted leave to

amend." *Lincoln v. Potter*, 418 F. Supp.2d 443, 454 (S.D.N.Y. 2006) (citing *Parker v. Columbia

Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000)); *see also Rent-A-Center Inc. v. 47

Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 103 (S.D.N.Y. 2003) ("Rule 16 is controlling and the

movant *must* satisfy the more stringent standard of good cause.") (emphasis in original). For this

reason, the heightened standards of Rule 16(b) must be satisfied and cannot "be short-circuited

by an appeal to those of Rule 15(a)." *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*,

No. 02 Civ. 1230 (LMM), 2006 WL 2242596, at *3 (S.D.N.Y. Aug. 3, 2006) (quoting *Parker*,

---

[4] In the event, however, that Vitale is granted leave to file its proposed Amended Complaint, Defendants will require substantial additional discovery. *See infra*, pp. 15-17.

204 F.3d at 340). Otherwise, it "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Parker*, 204 F.3d at 340.

Here, because Vitale seeks to amend seven months after the expiration of the deadline specified in the CMP, Vitale must satisfy the more stringent "good cause" standard set forth in Rule 16(b). *See, e.g., Lincoln*, 418 F. Supp.2d at 454 (denying leave under Rule 16 where motion to amend was made four months after the deadline set in the case management order).

## II.    VITALE CANNOT ESTABLISH GOOD CAUSE UNDER RULE 16 FOR ANY OF ITS PROPOSED AMENDMENTS

None of Vitale's proposed amendments satisfies the "good cause" requirement under Rule 16. Whether "good cause exists turns primarily on the diligence of the moving party in seeking to meet the deadline in the scheduling order." *Int'l Media Films v. Lucas Entm't, Inc.*, No. 07 Civ. 1178 (JGK)(FM), 2008 WL 781823, at *2 (S.D.N.Y. Mar. 20, 2008) (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)). In other words, "the movant must show that the deadlines cannot be reasonably met despite its diligence." *Lincoln*, 418 F. Supp.2d at 454. The court may also consider whether the amendment will prejudice the non-moving party, but "the absence of prejudice … is not alone sufficient to satisfy the good cause requirement of Rule 16(b)." *Int'l Media Films*, 2008 WL 781823 at *2. Indeed, "[i]f a party was not diligent, the good cause inquiry should end." *Lincoln*, 418 F. Supp.2d at 454.

Hence, leave to amend under Rule 16 must be denied where the information underlying the proposed new claims was known to the moving party either at the time the action was filed or before the deadline for amendment. *See, e.g., Parker*, 204 F.3d at 341 ("When he commenced the action, therefore, [the plaintiff] had all the information necessary to support a breach of contract claim, and nothing he learned in discovery or otherwise altered that fact."); *Lincoln*, 418

6

F. Supp.2d at 454 (denying leave to amend under Rule 16 where "the facts underlying [plaintiff's claim] were known to plaintiff at the time the action was filed"); *Trezza v. NRG Energy, Inc.*, No. 06 Civ. 11509 (PKC)(DF), 2008 WL 540094, at *6 (S.D.N.Y. Feb. 28, 2008) ("As [plaintiff] had all the information necessary to support his proposed amendment from the outset of the case, it cannot be said that he acted with the appropriate diligence."); *Nairobi Holdings v. Brown Bros. Harriman & Co.*, No. 02 Civ. 1230 (LMM), 2006 WL 2242596, at *3 (S.D.N.Y. Aug. 3, 2006) (finding plaintiff failed to show good cause where it "had access to all the material claimed necessary and essential" to make the new allegations at least seven months prior to making the amendment).

Here, Vitale knew the alleged facts underlying its proposed amendments at the outset of the case, and certainly before the deadline for amending the pleadings in the CMP. In fact, Vitale acknowledges that it knew about the 14 new software copyrights from the beginning. *See* Vitale MOL at 9. Indeed, it would be impossible for Vitale to argue otherwise, as its original Complaint charged Defendants with infringement of not only AMLINC 3.0, but also "its predecessors, such as INFO TRACK, ADMIN TRACK, and ANALYST LOG." Cendali Decl., Ex. 4 at ¶ 2; *see also* Vitale MOL at 2 (which *admits* "these prior versions and predecessor programs were part of Vitale's original copyright infringement claims"). Thus, by its own clear written admission, Vitale "had all the information necessary to support [its] claim, and nothing [it] learned in discovery or otherwise altered that fact." *Parker*, 204 F.3d at 341.[5] Vitale has not and cannot provide any explanation for its delay in asserting these additional copyrights, and thus has not acted diligently under Rule 16.

---

[5] Despite this clear admission, Vitale suggests that its delay is justified due to a purported delay by Defendants in producing certain software in discovery. *See* Vitale MOL at 10-11. While Vitale devotes much of its brief to these discovery disputes, it is a mere distraction because Vitale admits it had sufficient knowledge of the facts underlying these claims *prior* to the commencement of discovery.

The same analysis holds with respect to the claims based on the six new copyrights in instructional/procedural documents. Unlike the 14 software copyrights, which Vitale admits it knew about from the outset, Vitale implausibly contends that its claims relating to the six instructional/procedural documents emerged only because of certain materials produced in discovery. *See* Vitale MOL at 9. This assertion is flatly contradicted, however, by Vitale's November 10, 2008 letter to the Court, which states unequivocally that "the infringement claims based on six of Vitale's instructional and procedural documents ... ***have been the subject of Vitale's trade secret claims*** ..." Gilbert Decl., Ex. 5, p. 2 (emphasis added). If Vitale had a sufficient basis in its original Complaint to assert misappropriation of trade secrets based on the six documents, then it certainly had a sufficient basis to bring copyright claims based on those same materials. Thus, as with the 14 software copyrights, there is no credible explanation for Vitale's ten-month delay in asserting these claims.

Vitale attempts to dodge the issue by suggesting that, although it had a sufficient basis in the original Complaint to assert misappropriation for the six documents, its copyright claims relating to the very same documents somehow emerged only later, because documents produced in discovery "have gradually revealed a more complete picture of the extent of Defendants' wrongdoing." Vitale MOL at 8. That "gradual revelation" argument is inherently illogical where Vitale knew enough to claim trade secret misappropriation at the outset. However, even if it were not inherently illogical, Vitale's argument in this case has been repeatedly rejected by courts within this District. *See, e.g., In re Wireless Telephone Serv. Antitrust Litig.*, No. 02 Civ. 2637 (DLC), 2004 WL 2244502, at *5 (S.D.N.Y. Oct. 6, 2004) (rejecting "conclusory assertion" that new discovery triggered amendment where essential allegations underlying the claim were present in plaintiffs' original pleading); *Sohk Sportswear, Inc. v. K.S. Trading Corp.*, No. 02 Civ.

2016 (LMM)(THK), 2003 WL 22208352, at *2 (S.D.N.Y. Sept. 23, 2003) (rejecting amendment under more liberal Rule 15 standard where testimony obtained in discovery only "added some increment of strength" to plaintiff's claims). Thus, Vitale's unsupported assertion that it obtained additional evidence in discovery related to the six documents (documents about which Vitale already knew enough to assert trade secret misappropriation at the outset)—even if true— does not establish good cause under Rule 16. *See id.*

Likewise, Vitale could have asserted its fiduciary duty and tortious interference claims at the outset, as the essential allegations for both of those claims were included in the original Complaint. As to the fiduciary duty claims, Vitale asserts in its proposed Amended Complaint that the Rose Defendants breached a fiduciary duty to Vitale by "using and disclosing Vitale AML's confidential information in competition with and to the injury of Vitale AML and for the benefit of the Promontory Defendants." Cendali Decl., Ex. 1 at ¶ 113. However, Vitale's original Complaint alleged those same facts. In particular, the original Complaint included allegations that the Rose Defendants (1) "had access to Vitale AML's proprietary information [and] trade secrets", (2) "discontinued their work for Vitale in April 2006, and began working for the Promontory Defendants", and (3) "conspired illegally to misappropriate Vitale AML's protected trade secrets and confidential information in order to produce and license CASE TRACKER." Cendali Decl., Ex. 3 at ¶¶ 29, 34. Thus, the only thing new about Vitale's fiduciary duty claim is the allegation that a fiduciary duty was owed, which, of course, is a legal conclusion for which Vitale did not need additional discovery. Moreover, Vitale points to no evidence from discovery that supports the idea that the Rose Defendants owed Vitale a fiduciary duty in the first place.

9

The same is true with respect to Vitale's fiduciary duty claim against the Samaan Defendants. Vitale's proposed Amended Complaint alleges that the Samaan Defendants breached their fiduciary duty by "(a) acting for the Promontory Defendants in connection with transactions and matters concerning the scope of their agency without Vitale AML's consent or knowledge, (b) competing with Vitale AML concerning the subject matter of their agency …, and (c) using and disclosing Vitale AML's confidential information in competition and to the injury of Vitale AML …" Cendali Decl., Ex. 1 at ¶ 112. Again, the basic allegations underlying these claims were included in the original Complaint. *See* Cendali Decl., Ex. 3 at ¶¶ 32-34 (alleging that the Samaan Defendants (1) "terminated his relationship with Vitale AML", (2) "retained Vitale AML's proprietary information", (3) negotiated to be "retained by the Promontory Defendants", and (4) "conspired to illegally misappropriate Vitale AML's protected trade secrets … in order to produce and license CASE TRACKER."). The only new allegation in the Amended Complaint is that a fiduciary duty was owed (which is merely a legal conclusion), and once again, Vitale points to no evidence from discovery that supports the existence of such a duty. The fact that Vitale now alleges that Samaan was working for Promontory at the same time he was working for Vitale is plainly immaterial because any breach, if there were one, would have occurred regardless of the precise date on which Samaan commenced work at Promontory. Vitale does not—and cannot—argue otherwise.

Finally, Vitale has not explained why it could not have brought its claim for tortious interference with business relations at the outset. Vitale alleges in its proposed Amended Complaint that it entered into agreements with William Cullen, Carlos Ortiz and Gerald Linnane in March/April 2007, and then, at the urging of Rose, those three individuals left Vitale to work for Promontory. *See* Cendali Decl., Ex. 1 at ¶ 49. Given that the acts in question all allegedly

occurred in March or April 2007 (before the case was filed), Vitale could have brought this claim from the beginning. Vitale provides no explanation for its delay (or what purported discovery prompted this new claim) and therefore has not met its burden in establishing good cause under Rule 16. *See Parker*, 204 F.3d at 340 (moving party must establish good cause).

Given that Vitale had sufficient knowledge to assert all of its proposed amendments at the outset, and that knowledge has been irrefutably demonstrated by Vitale's own written admissions with respect to all 20 new copyrights, Vitale cannot be found to have acted diligently under Rule 16. Vitale's lack of diligence is further illustrated by the fact that the CMP, which set a deadline of May 1, 2008 for amending the pleadings, was *twice* amended to extend the deadlines for fact discovery, yet in both cases Vitale failed to inform Defendants or the Court that it would be seeking to amend. Meanwhile, during this time, Defendants have been developing a litigation strategy and taking discovery based solely on the original Complaint, much of which would need to be revisited and significantly expanded were the amendments allowed.[6] It is precisely this kind of uncertainty during the course of litigation that Rule 16 was designed to prevent. *See Int'l Media*, 2008 WL 781823, at *2 ("Rule 16(b) was designed to create certainty in pretrial proceedings and ensure that 'at some point both the parties and the pleadings will be fixed.'") (quoting Fed. R. Civ. P. 16); *In re Wireless Telephone*, 2004 WL 2244502, at *5 ("Disregarding the instructions of a scheduling order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.").

Accordingly, because Vitale could have asserted each of its proposed amendments at the outset, and did not act diligently to amend its Complaint prior to the deadline set in the CMP, it

---

[6] Although prejudice to the non-moving party need not be shown in order to find a lack of good cause under Rule 16, Defendants here would suffer significant prejudice if the amendments are allowed, as discussed *infra*, pp. 15-17.

11

has not satisfied the good cause requirement under Rule 16. Therefore, Vitale's proposed
Amended Complaint should be denied in its entirety.

## III.  VITALE CANNOT SATISFY THE REQUIREMENTS OF RULE 15 FOR ANY OF ITS PROPOSED AMENDMENTS

Even assuming *arguendo* that Vitale has shown good cause under Rule 16, its amended
pleading must also survive scrutiny under Rule 15. Leave to amend under Rule 15 "shall be
freely given when justice so requires." Fed. R. Civ. P. 15(a). Notwithstanding the liberality of
the standard, "[w]hether to allow amendment is a decision that rests in the discretion of the
district court." *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 112 F.R.D. 417, 419 (S.D.N.Y.
1986). Thus, "a court may deny permission to amend, in whole or in part, if there is a proper
reason to do so." *Lincoln*, 418 F. Supp.2d at 454-55. "When considering whether an
amendment should be granted under Rule 15(a), courts look toward a series of factors that
include: delay in the filing of the amendment, undue prejudice from which the defendant would
suffer, and whether the pleading would be futile." *Nairobi Holdings*, 2006 WL 2242596, at *4.
Given Vitale's unexplained ten-month delay, the very substantial prejudice to Defendants and
the futility of its two state law claims, Vitale's proposed Amended Complaint should be denied
under Rule 15 as well.

### A.  Vitale Has Unduly Delayed In Seeking Leave To File Its Amended Complaint

In the context of Rule 15(a), "delay can act as a predicate for bad faith, and bad faith is a
sufficient reason to deny leave to amend." *Id.* at *4 (citing *Green v. Wolf Corp.*, 50 F.R.D. 220,
223 (S.D.N.Y. 1970). Courts are especially likely to find undue delay where "the facts essential
to Plaintiff's new claims of infringement were known to Plaintiff prior to filing the Complaint."
*Sohk Sportswear*, 2003 WL 22208352, at *2. Indeed, the relevant inquiry is how long the
moving party has delayed since "becoming aware of the essential facts" that provide the basis for

12

the party's amended claim. *Stone v. Courtyard Mgmt. Co.*, No. 99 Civ. 4780 (LTS)(KNF), 2001 WL 395159, at *2 (S.D.N.Y. April 17, 2001) (denying amendment where plaintiff was aware of the claim six months prior to seeking amendment).[7]

Here, as previously discussed, according to the statements in its original Complaint, Vitale was aware of all the claims at least ten months before seeking amendment. All of the additional matters it now seeks to inject into the case were known at the outset, and the only reason they were not then included is either Vitale's tactical choice in pleading or its mistaken belief that prior, unregistered versions of the software would be included simply by defining "AMLINC" expansively. Whatever Vitale's tactics or beliefs, it is axiomatic that federal courts lack jurisdiction over unregistered copyrights. *See* 17 U.S.C. § 411(a); *In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 116, 122 (2d Cir. 2007) ("section 411(a)'s registration requirement limits a district court's subject matter jurisdiction to claims arising from registered copyrights only"). Nor is it significant that the unregistered versions of the software are related to AMLINC 3.0. "[T]he existence of a claim based on a registered copyright does not bring within a district court's jurisdiction all related claims stemming from unregistered copyrights." *Id.* at 123. Vitale's ignorance of such a basic provision of copyright law, if that is what occurred here (rather than a conscious, tactical choice) is certainly not a sufficient basis for granting leave, even under the more liberal Rule 15 standard. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) ("The burden is on the party who wishes to amend to

---

[7] In this regard, Vitale's citation to cases where amendments have been allowed up to three years after the *initial pleading* is misplaced. *See* Vitale MOL at 8-9. These cases make clear that the most important factor in determining undue delay is how long the moving party has delayed since becoming aware of the relevant facts. *See, e.g., State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843 (2d Cir. 1981) (granting leave to amend where plaintiff sought leave within a few months after learning of new facts during a deposition); *Middle Atlantic Util. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 384-85 (2d Cir. 1968) (granting leave to amend where plaintiff acted diligently to amend its complaint to conform to an unexpected change in the law).

provide a satisfactory explanation for the delay, and … ignorance of the law is an unsatisfactory excuse.").

The decision in *Sohk Sportswear* is also instructive. As in the present case, the plaintiff in *Sohk Sportswear* sought leave to amend its complaint during the discovery period to include additional copyright registrations. Leave to amend was denied, however, because (1) the "new claims of infringement were known to Plaintiff prior to filing the Complaint" as evidenced by the fact that the original complaint included allegations covering the proposed new works and because (2) the supposedly "new" development of filing new copyright registrations was "a new development which was Plaintiff's own making." *Sohk Sportwear*, 2003 WL 22208352, at *2-3.

The same reasoning applies here. As noted, (1) even Vitale's original Complaint alleged infringement of the earlier versions of the AMLINC software (albeit improperly and without satisfying the jurisdictional prerequisite to filing 14 separate software claims) and (2) the only "new" development is that Vitale has apparently only now realized that defining "AMLINC" collectively in the original Complaint was an improper way to sweep in the earlier versions of the software. Further, the *Sohk* court's finding of undue delay was not based on the procedural posture of the case, as Vitale contends (*see* Vitale MOL at 14), but because the plaintiff was "in a position to assert its infringement claims" long before the plaintiff moved to amend. *Id.* at *2. The same is true here and, like the plaintiff in *Sohk*, Vitale has "not proffered any plausible reason for its delay" in filing its 20 new copyright registrations. *Id.* at *3.

In contrast to *Sohk*, the two copyright cases on which Vitale relies are entirely inapposite, as they do not address the standards governing Rule 15, let alone Rule 16. *See* Vitale MOL at 10. For example, the procedural posture of *Conan Props., Inc. v. Mattel, Inc.*, 601 F. Supp. 1179, 1183 (S.D.N.Y. 1984) was a motion to dismiss, and thus the case did not contain any

discussion of the standards governing either Rule 15 or Rule 16. Nor did the court in *Computer Assocs. Int'l v. Altai, Inc.*, 775 F. Supp. 544, 557 (E.D.N.Y. 1991) analyze the applicable Rule 15 or Rule 16 standards. There, amendment to include additional registrations was permitted simply because the court had already determined that the plaintiff's *preexisting registrations* were sufficient to cover the works in suit. *See id.* ***That is the exact opposite of this case, where the only registration that is currently at issue—AMLINC 3.0—expressly disclaims all prior versions of the software, including the 14 new software copyrights that Vitale now seeks to add.***

In sum, the Court should find that Vitale has unduly delayed—even under the more liberal Rule 15 standard—in waiting ten months to assert allegations that it could have brought at the outset.

### B. Defendants Would Suffer Very Substantial Prejudice If Vitale's Amended Complaint Were Allowed

In the context of Rule 15, prejudice occurs "when a defendant would need to expend additional resources for discovery and trial preparation, which would delay resolution of the dispute at hand." *Nairobi Holdings*, 2006 WL 2242596, at *4. "[T]he longer the period of an unexplained delay, the less will be required in terms of a showing of prejudice." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

Having spent the last ten months focusing on exclusively one copyright, Defendants would suffer severe prejudice were the case expanded to include 20 additional copyrights. Not only would adding 20 new copyrights undermine Defendants' litigation strategy that has been developed over the last ten months (*see, e.g., Brooks v. AIG SunAmerica Life Ins. Co.*, 480 F.3d 579, 590 (1st Cir. 2007) (denying leave to amend where amendment would force defendant to "shoot continuously at a moving target")), but the burden—on both Defendants and the Court—

that would arise from the addition of 20 new copyrights would be enormous. For each new copyright, Defendants must assess, *inter alia*, (1) whether the registration is valid; (2) whether Vitale owns the work; (3) whether there is sufficient original material; (4) whether copying has occurred; (5) whether such copying pertains to original material; (6) whether defenses such as merger and *scenes a faire* apply; and (7) damages issues. At least five of these issues (items 3 through 7 above) will require expert opinion on each of 20 copyrights, so there will necessarily be at least 100 new issues for expert opinion.

Indeed, Vitale's registration of 20 new copyrights raises a host of complex authorship and ownership issues. In most of its new copyright registrations, Vitale claims that several joint authors contributed to the copyrights, some of whom are not parties to this lawsuit. *See* Gilbert Decl., Ex. 6. In each case, Vitale contends that the authors granted rights to Vitale by a written copyright assignment. *See id.* Thus, for each of the 20 new copyrights, a substantial review of documents relating to authorship and ownership (not yet produced) will be required. By way of merely one example, Vitale filed a copyright registration for a document called "RFI Instructions," which Vitale claims has three joint authors: Vitale AML Consultants, Inc. (via work-for-hire), Iridium Corporation, Inc. (via work-for-hire) and Lori Fiegenbaum (not a party to this lawsuit). To assess Vitale's ownership claims, all of the documentation relating to authorship, including work-for-hire agreements, licenses and assignments, would have to be analyzed, and each of the individual authors would have to be deposed. Such documents have not been produced, let alone scrutinized in depositions.[8]

Further, with respect to the 14 proposed new copyrights covering computer programs, discovery will be significantly expanded because each will require a separate "abstraction-

---

[8] Nor have Defendants received all of the relevant authorship and ownership materials relating to the 14 new software copyrights.

filtration" analysis. The painstaking nature of such analysis is described in detail in *Computer Assocs. Int'l v. Altai Inc.*, 982 F.2d 693, 706-11 (2d Cir. 1992), and entails, *inter alia*, "examining the structural components [of the program] at each level of abstraction to determine whether their particular inclusion at that level was 'idea' or was dictated by considerations of efficiency, so as to be necessarily incidental to the idea; required by factors external to the program itself; or taken from the public domain… ." *Id.* at 707. This will require extensive new expert analysis and discovery on this issue alone.

The necessary analysis with respect to alleged software copying—another expert-intensive endeavor—would also be very significantly expanded. At present, because the registration certificate for AMLINC 3.0 disclaims all prior versions, only that segment of code that is unique to AMLINC 3.0 (vis-à-vis prior versions) would need to be compared to Defendants' code to resolve the issue of alleged copying. If, however, the proposed Amended Complaint were allowed, all 15 versions of Vitale's software would have to be analyzed in their entirety and then separately compared with each of the versions of Defendants' software. The enormous amount of expert analysis that would be entailed in that task is difficult to overstate. Further, in the event the Court were to grant Vitale's motion to file its proposed Amended Complaint, Defendants intend to file counterclaims with respect to many—or perhaps all—of the 20 copyrights, including, without limitation, possible counterclaims for a declaration of ownership and copyright infringement, as Defendants are the true owner of the material at issue.[9]

In sum, Vitale's proposed injection of 20 new copyrights would significantly expand the scope of discovery and cause very significant prejudice to Defendants. Moreover, Vitale's proposed fiduciary duty and tortious interference claims would also cause Defendants substantial

---

[9] In that regard, Defendants may need to seek leave for an extension of time to answer or otherwise respond to any proposed Amended Complaint so that they may obtain copyright registrations for the works at issue.

17

prejudice insofar as discovery would need to be expanded, and in some cases revisited, to account for those new claims. Given such prejudice, leave to amend should be denied. *See Nairobi Holdings*, 2006 WL 2242596, at *4 (denying leave to amend during discovery period in part because defendants would be required "to expend additional resources by engaging in additional discovery because the proposed amendment would change the scope of the litigation.").

### C.     Vitale's Proposed Amended Claims For Breach Of Fiduciary Duty and Tortious Interference With Business Relations Are Futile

In addition to the substantial prejudice that such claims would cause, Vitale's proposed claims for breach of fiduciary duty and tortious interference with business relations are futile. A motion to amend may be denied as futile if "the amended portion of the complaint would fail to state a cause of action." *Parker*, 204 F.3d at 339.[10] That is true of both of Vitale's new state law claims.

### 1.     Vitale's fiduciary duty claims are futile

As discussed above, Vitale has alleged in its proposed Amended Complaint that the Samaan and Rose Defendants owed a fiduciary duty to Vitale through their work as independent contractors, and then breached that duty by engaging in a variety of acts. *See* Cendali Decl., Ex. 1, ¶ 110-114. A fiduciary relationship between two persons exists "when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991). Courts have made clear, however, that a party does not owe a fiduciary duty where he is nothing more than an independent contractor with an arm's length business arrangement. *See, e.g., Horn v. PTJP Partners, L.P.*, 16 A.D.3d 103, 104 (N.Y. App. Div. 2005); *Calvin Klein Trademark Trust*

---

[10] Notably, at least one court in this District has also considered whether the proposed claim would withstand a motion for summary judgment under Rule 56. *See Trezza*, 2008 WL 540094, at *6.

*v. Wachner*, 129 F. Supp. 2d 248, 250 (S.D.N.Y. 2001) (dismissing breach of fiduciary

counterclaim where counter-defendant was a mere independent contractor); *Oursler v. Women's*

*Interart Center, Inc.*, 170 A.D.2d 407, 407 (N.Y. App. Div. 1991) ("A conventional business

relationship, without more, does not become a fiduciary relationship by mere allegation");

*Fleischer v. W.P.I.X. Inc.*, 30 Misc.2d. 17, 29 (N.Y. App. Div. 1961) (no fiduciary relationship

where parties were dealing with one another at arm's length, "as independent contractors").

  Here, Vitale's proposed Amended Complaint clearly alleges that the Samaan and Rose

Defendants were merely independent contractors. *See* Cendali Decl., Ex. 1, ¶ 31 ("the Samaan

Defendants and all other independent contractors were retained through Vitale AML."); ¶ 39

(Vitale "hired the Rose Defendants as independent contractors …"); ¶ 40 (referring to the "Rose

Defendants and all other independent contractors working on project on behalf of Ms. Vitale

…"). Accordingly, Vitale's own allegations foreclose any possibility of a claim for breach of

fiduciary duty.

  Moreover, in an e-mail from Anne Vitale to Hani Samaan, Vitale explicitly rejected the

notion that Samaan owed Vitale a heightened duty: "I cannot affirm to the Bank that you

rendered these 'generalized' services since ***you are not my employee and, thus, you are not***

***under my daily supervision and control. You have your own company*** and schedule and duty

to properly record this information." Gilbert Decl., Ex. 7 (emphasis added).

  In sum, Vitale's own allegations in the proposed Amended Complaint, as well as Vitale's

own statements, conclusively establish that Vitale never believed that the Samaan and Rose

Defendants owed Vitale a fiduciary duty. Accordingly, any assertion of a fiduciary duty claim

by Vitale would fail on its face and, therefore, amending the Complaint to include any such

claim should be denied.

### 2.    Vitale's tortious interference with business relationships claim is futile

Vitale's claim for tortious interference with business relationships against the Rose Defendants is futile as well. For this claim, Vitale alleges that it had agreements with three individuals (William Cullen, Carlos Ortiz and Gerald Linnane) and that the Rose Defendants "lured" them away to work on projects for Promontory. *See* Cendali Decl., Ex. 1, ¶ 49. These allegations do not state a claim for tortious interference with business relationships.

The elements of that claim are: "(1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship." *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000). As to the third element, Vitale's proposed Amended Complaint does not allege any facts that the Rose Defendants used dishonest, unfair or improper means. Rather, Vitale includes only the following bare allegation:

> Upon information and belief, motivated solely by the intent to damage Vitale AML's business, the Rose Defendants had induced these independent contractors to end their business relationships with Vitale AML and to work on a project for Promontory Financial.

Cendali Decl., Ex. 1, ¶ 49; *see also* ¶ 104 (stating same basic allegation). Courts have made clear, however, that such conclusory allegations are mere recitations of the elements of the claim are therefore insufficient to state a claim for tortious interference with business relations. In *Berman v. Sugo LLC*, 580 F.2d 191, 208 (S.D.N.Y. 2008), the defendant's counterclaim "simply recite[d] the elements for tortious interference with prospective business relations without alleging facts to support [the] claim." The court found the defendant's allegations insufficient because the defendant failed "to set forth any facts regarding the improper, deceptive, illegal or fraudulent conduct in which Plaintiff and Counter-Defendants engaged. Such conclusory

20

Case 1:08-cv-01315-RMB-RLE    Document 60    Filed 01/02/2009    Page 26 of 27

allegations are insufficient to state a claim." *Id.*; *see also Advanced Global Tech. LLC v. Sirius Satellite Radio, Inc.*, 836 N.Y.S.2d 807, 812 (N.Y.Sup.Ct. 2007) (holding that plaintiff's allegations that defendant engaged in coercive business practices "without justification, entirely out of malice" and without "normal economic self-interest" were conclusory and thus insufficient to state a claim). Likewise, Vitale's conclusory allegations here are insufficient to state a claim for tortious interference with business relations. *See Berman*, 580 F.2d sy 208 (in dismissing a tortious interference claim, the court stated that "[t]o survive a motion to dismiss, a pleading must do more than assert a 'formalistic recitation of the elements of a cause of action' or set forth 'labels and conclusions.'") (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2006)).

Moreover, even Vitale's conclusory assertion that the Rose Defendants acted with the "sole purpose" of harming Vitale is belied by other allegations in the proposed Amended Complaint. Indeed, Vitale alleges that the Rose Defendants' work for Promontory was "*directly competing*" with Vitale AML. Cendali Decl., Ex. 1, ¶ 1 (emphasis in original). Thus, because Vitale alleges that the Rose Defendants acted in direct economic competition with Vitale, it cannot be that the Rose Defendants were motivated "solely by malice or to inflict injury by unlawful means rather than by self-interest or other economic considerations." *Allcar Motor Parts Corp. v. Federal-Mogul Corp.*, No. 96 Civ. 4419 (JFK), 1998 WL 671448 at *5 (S.D.N.Y. Sept. 29, 1998) (if the interference complained of "is intended, at least in part, to advance one's own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct.") (citing *PPX Enter. Inc. v. Audiofidelity Enter.*, 818 F.2d 266, 269 (2d Cir. 1987)). Accordingly, Vitale has not stated a valid claim for tortious interference with business relationships.

## CONCLUSION

For the foregoing reasons, Vitale's proposed Amended Complaint should be denied. Vitale waited ten months to bring claims that it clearly—based on statements actually made in its original Complaint—could have been asserted at the outset. It then continued to delay an additional seven months after the deadline for amendment in the case management order. Vitale has not explained this significant delay (nor can it), and therefore has not demonstrated good cause under Rule 16, and its motion should thus be denied. Moreover, even under Rule 15, Vitale should not be granted leave to file its belated Amended Complaint because it would result in a very significant expansion of discovery, a radical expansion of expert analysis, a host of new counterclaims, and, in any event, is futile with respect to the two new state law claims. Vitale's original Complaint contains admissions that bar it from now claiming that it did not have the information necessary to file these "new" counts in its original Complaint. Moreover, the assertion that Vitale learned these facts in discovery is demonstrably false. Vitale's motion should be denied.[11]

MAYER BROWN LLP

Dated:  January 2, 2009

By: _Robert Gilbert / G. F._

Robert D. Gilbert
Gregory A. Frantz
1675 Broadway
New York, New York 10019
(212) 506-2500

*Attorneys for Defendants Promontory*
*Financial Group, LLC and*
*Promontory Forensic Solutions, LLC*

---

[11] Given that Vitale's motion should be denied (and further that Vitale applied the wrong legal standard), Vitale's request for fees and costs relating to its motion is plainly frivolous and should be denied as well.